Next case is Research Conservation, Resource Conservation Group v. The United States, 2009-5091. Are we ready when you are, Mr. Rich? Yes, sir. May it please the court. This is not a procurement case. The threshold issue in this case is whether 28 U.S. 1491A, which included the quasi-contractual right to claim good faith on the part of the government or the Navy, in this case survived the enactment of ADRA. Do you agree that if 1491B1 applies here, that the implied contract theory has been eliminated, at least to that extent? No. No. The reason I can't agree with that is that when you go through the entire congressional record, which I did the last few nights, there is not one word in that record that would indicate an intent to eliminate or carve out what is within 1491A, the contractual claim here. But a lot of emphasis on wanting to have a single standard and to have it in the Court of Federal Claims. Doesn't that suggest, to the extent that they were giving a new APA right to go to the Court of Federal Claims, that they were superseding the earlier approach? No. What I think that means is that they were imposing the APA standard on the issue of good faith, whether or not the government acts in good faith. So even in a procurement case, your theory is you could still go to the Court of Federal Claims under an implied contract theory? Yes, I think you can. I can't imagine if you look at what happened from 1956 forward. This is a new area of law for me, so I've been reading a lot of cases recently. But if you go through the higher case, 1956 forward and through the Scanwell, which established the APA jurisdiction in the district courts, you go through that wealth of cases, there has to be something to show that they wanted to get rid of this quasi-contractual claim of good faith. And there is nothing. I would have thought you'd be making a different argument. I would have thought you would be arguing that, yeah, 1491b1 is exclusive where it applies, but where it doesn't apply, you have the old remedies left because Congress didn't intend to change the old remedies except to the extent that it's supplanted. That's what I would have thought, John. I think the quasi-contractual claim is subsumed within 1491b now. I do believe that 1491b has taken that and subsumed it within it, and I think you get to the same point because if you are an interested party under 1491b, you can bring a claim before or after the award, contesting the solicitation or contesting the award of the contract. So I think you get to the same place, but I don't think that without anything you can assume that we're getting rid of this very strong element of- That is, to the extent that 1491 applied. I think it clearly affected the Court of Federal Claims insofar as it got rid of Scanwell jurisdiction, brought everything back into the Court of Federal Claims, and gave them the APA standard. Well, which would seem to preclude the implied contract there. I've tried an awful lot of cases, and I don't understand how you reach that conclusion. I don't know how you can jump to the point that the implied contract degree is gone because you now have the APA process or standard of review. I mean, why don't you look at the record? I mean, what this means to me, and I've written an awful lot of laws, what this means to me is that if you apply the APA standard, you're basically making a decision on the record. And you're making a determination as to what happened on this record, whether or not the decision maker acted rationally, whether he acted in good faith, whether he was arbitrary, whether he was capricious. I don't know how that militates against the quasi-contractual claim. I don't know why it should. I mean, what is there to say from now on, from 1996 forward, you don't have that ability to claim that they had to deal in good faith, they had to recognize the situation and not act illegally, not act arbitrarily. It's the same thing. I mean, there are states in this country where when you enter into contracts with private party contracts, the good faith obligation is assumed you have an obligation to act in good faith on both sides of the counter. That's something that's ingrained in the common law of some of the states of this country. I don't understand how, all of a sudden, this is gone. I think the reasoning in the Red River case is closest, as I indicated in the brief, is closest to our position. I don't know how you just get rid of this because you're adopting an APA standard. I mean, that seems to be what you're indicating, Judge Dyke. What about the proposition in the congressional record, which is recited by this court in Emory and in Impresa Construcci, the Italian case, which preceded Emory by a few months? What about the proposition that the overall intent was to maintain all of the actions that have previously existed to protest bids in both the Court of Claims and the U.S. District Court? I mean, that appears to be something, first of all, that's established by the Emory case in this circuit. How do you get away, I must ask the question, how do you get away from the concept that you are retaining everything that was there before and yet say, well, the contractual claim is gone? I don't know. I think there's too much in the congressional record, there's too much in the case law to say that the 1491A quasi-contractual claim is banished, or it's been carved out. There's just not enough there, and I know the court is familiar with all the law review articles that have talked about this issue, which says that the legislative history is totally underwhelming in this regard, but that is the fact. There's nothing there. I don't think you can reach it by saying we have the APA standard and therefore we don't have the contractual claim. Those are two different things. One's a standard review, one is the basis of getting relief. I don't see them together, Your Honor. I will say that even if, in this case, that standard is gone, we probably still have a weakened case which can be brought under B, which is an interest of parties' objection to the solicitation, or the solicitation process in this case, and the award of the contract. Now in this case, the facts are fairly evident. The Navy deprived my client of objecting to the process because they didn't announce it was non-responsive, or they didn't announce that, hey guys, you shouldn't go out and spend a half million dollars preparing all these mining plans, digging all these holes, trying to determine how much reserves are there. They encouraged that, and then at the end of the day, they said, well, that's non-responsive, we don't have authority to lease this property for mining purposes. There has to be some type of relief under those circumstances, and what comes to mind is the obligation to deal in good faith, the obligation to consider the proposals fairly and honestly. But even if that's not true, I think 1491B would give this court, or the U.S. Court of Federal Claims, the ability to review this case under B1 as an objection to solicitation. I think Judge Braden was clearly wrong in her determination that the resolution, was clearly wrong in her determination that the terms in connection with her procurement would apply to the three stages of 1491B. I don't even think the Department of Navy has made that assertion or is arguing that, given the thought process with respect to, or the rule of interpretation with respect to the last antecedent, and the fact that it is not cut off by various comments, but is connected with the term or. So I think in that respect, Judge Braden is clearly incorrect. I also believe that our reliance on the Georgetown case was also inappropriate. I think the court in Red River made the right decision, and I think there is enough precedent to support that premise. Mr. Rich, shall we save the remainder of your time for butter? Yes, Your Honor. Thank you. Mr. Bowen. May I please the court? My name is Mr. Bowen, and I represent the Appellee of the United States. Let me tell you what your problem is, okay? Okay. You have a pretty good argument that the extent that 1491B1 is applicable, that it displaces the implied contract theory and you have to proceed under 706 in the Court of Federal Claims. You have a pretty good argument that 1491B1 doesn't apply in this case, okay? So let's assume you're right on both of those things. What's their remedy? Do they have to go into the district court under 706, or do they have no remedy at all? Their remedy would have been to object to either the solicitation. Now, what's the remedy, judicial remedy? Judicially, their remedy was to come to the Court of Federal Claims and object to either the award or the solicitation. Those are not governed by in connection with the procurement. Having failed to do that, though, they then allege a violation of statute of regulations. So you lose the right to challenge the award because it's not a procurement case. They could still challenge the award or the proposed award, but they did not do that. They have not said that Gamberlous County should not have gotten the award. You're saying that people in non-procurement cases have lesser rights than people in procurement cases, right? Yes. And so why would Congress want to do that? Pre-existing remedies in non-procurement cases if they weren't giving them a remedy under 1491B1. Two responses. First is that it's not clear that there was a remedy in a non-procurement case prior to the passage of Act. Sure, there are cases involving non-procurement situations. You haven't done your research. There were cases like that. There were Scanwell cases like that. Well, none were cited in the opposing briefs. Maybe so, but there are cases. And the only two cases that I can think of would be Prineville Sawmill and then Wetzel-Otzel. Both of those were brought about a timber auction where the very purpose of the contract was for the person to buy the timber. In both of those cases, the solicitations were canceled. And then in both of those cases, the- Yeah, Prineville was a case in which you could go into the district court under the Scanwell jurisdiction. And you're saying that was taken away without substituting a new remedy in the Court of Federal Claims under 1491B1. I would argue that because they objected to the action of taking away the solicitation, that is still- You're saying because it's a non-procurement case, they lose a right, which someone in a procurement case would have. I would say, once again, I do not concede that, as I said, with Prineville and Wetzel- If this were a procurement case, could they go to the Court of Federal Claims under 1491B1? Absolutely. All right. And you're saying because it's not a procurement case, they can't, right? Under B, yes. Right. Okay, so what is their remedy? If they can't go under B, what is their remedy? Where can they go? Well, I would say that they can go nowhere. For this specific case, where they did not object to the solicitation or to the award of the proposed award, they're alleging a violation- So Congress took away their right to go anywhere. Only when they only allege a violation of statute of regulation. And Congress took it away without any explicit direction or statement. Just did so, eliminated it, and that's somehow in keeping with all of the congressional intent that you set forth, which talks about giving access to one forum so that they can have a uniformity in decision. So either we've eliminated it completely or we're throwing it out to some type of other remedy which you can't identify. I would say that Congress didn't really eliminate because I believe that both Prineville-Sawmill and Futsal are distinguishable from the current case. So I challenge the characterization that there is anything eliminated. I would say that bidders for non-procurement contracts, because of this court's definition of procurement in distributed solutions, that they cannot simply allege a violation of statute or regulation because that stuff is limited by this court's definition of procurement. And even one step further, why would a lease contract be eliminated under the procurement definition? When it talks about both procurement of, I think it's goods and or services. Right. So in a setting where you have a long-term lease such as was proposed where someone expended the drilling costs, etc., to come up with a proposal, why is that so specifically excluded under your definition of procurement? Because the government's not acquiring any goods or services. The government owns the land. It's leasing it to the prospective bidders. So the government's not actually obtaining any goods. Okay. So then if they were going to make this change, wouldn't Congress have specifically eliminated that portion by identifying it as no longer a right? If you're in the bid protest mode with an implied contract of good faith in dealing, we're eliminating that as a right of action. As you pointed out in our briefs, the Supreme Court does not require that Congress specifically amend the more general statute in order to find that a later enacted more specific statute. Yeah, yeah, yeah. But your problem is this. The conference report, which tends to be authoritative, says they're not doing that. The sentence says this section is not intended to affect the jurisdiction or standards applied by the Court of Federal Claims in any other area of the law. Doesn't that mean to the extent that we're not providing this new remedy in 1491B1, we're keeping the old remedies? I understand the question correctly. You're saying because Congress said we're not intending to affect anything else, anything not governed by 1491B can still become under 1491A? Right. Isn't that what it means? You would say no because Congress was talking about all bid protests. You're saying the conference report doesn't mean what it said. I would say that the conference, when it says any other remedies, what the conference report is talking about is remedies not involving bid protests. When it comes to bid protests, however, I think it's pretty clear if you look at the evolution of the statute and the fact that the Senate's version of the statute is entitled bid protests, that bid protests come under B. They never thought, there's no indication in legislative history, they thought of bid protests at all in connection with non-procurement situations. The whole legislative history is directed to procurement, isn't it? Yes. So? But Congress was thinking a lot about bid protests. And in that specific context, we can argue about whether or not Congress contemplated keeping contemplated procurements. I would argue that the other language of the statute, where it says an interested party can challenge a solicitation award, a proposed award, speaks to of a contract, a solicitation for a contract, the proposed award of a contract. So there, Congress did not use the limiting language of procurement. Thus, Congress did allow for protestors to non-procurement contracts to still have a remedy. It's just that it chose to limit the final one, violation of statutory regulation. Why would Congress possibly want to deny a remedy for non-procurement contracts without substituting a new remedy for it? Why would they want to do that? The reason that Congress may have wanted to do that is there are potentially fewer concerns when the government is selling stuff that it already has or offering it up to lease when the government is expending taxpayer funds. There is a greater possibility of corruption. Secondly, regardless of why Congress may have wanted to do that, is that the broader language of any violation of regulation or statute in connection with a procurement, any violation of statutory regulation is pretty broad. Congress may well have said, look, we're going to allow you to sort of keep a check on the potential corrupting power of procurements. And, you know, you can also challenge specifically in all contractual cases the situation where you're challenging the solicitation of the award of the proposed award. So the conclusion is deal with the government at your own risk if it's a non-procurement contract because we don't have the same concerns about potential issues such as corruption. And I can't imagine that in a non-procurement contract, we wouldn't have the same issues of potential corruption. In this setting, I believe the factual record was something more like a public outcry about the proposed plan seemed to potentially or allegedly influence why it was negated as being a contract. But couldn't it simply also be some other corrupt recipient, which is why they would rule the way they did? I would only challenge your characterization that non-procurement bidders would have to deal with the government at their peril. I would say that by using the language solicitation of a contract or proposed award of a contract, they can still, you know, if you are a bidder for a non-procurement contract and you feel you have been aggrieved, you can challenge that solicitation. You can then challenge the proposed award and say, no, I would have given better money, given better value for the government. So there, there is a remedy and that is a check on any, that does provide a check against arbitrary government action. A partial check, right? A partial check. It doesn't go. Using this court's definition of procurement as it adopted in distributed solutions, it does not go and cover the language violation of regulation or statute. The only, another point which I would like to emphasize is that even if this court feels that the court below did have jurisdiction over this claim, this court could nevertheless affirm the dismissal of the complaint based upon that it simply was not responsive and the Navy could not have accepted it under the language of the statute. Well, even if you couldn't have accepted the thing, maybe you're at fault for not telling that earlier, letting them run tests on the thing and spending a lot of money without telling them what your interpretation of the contract was. That's basically their claim. They're not saying you have to give us, you have to lease the land to us for mineral extraction. They're saying you misled us and we're entitled to get back our bid preparation costs because you told us it was okay to go forward and you switched signals on us. We did permit them to go on to the property of the Naval Academy and to do the testing. We did clear that. However, we didn't have a formal bid until March. They did their testing in February. Thus, it would have almost been giving them an unfair advantage if we had been telling them bits of information that they were not asking us in the formal context. As you pointed out in our brief, bidders can ask questions. In this case, a number of bidders did ask the Navy very specific questions. Can we do this? What about this? What about this? RCG chose not to ask. But why would they ask? You already told them it was okay. You let them come in and make the tests. Didn't they have every reason to believe that they could bid on it for sand extraction? We would argue that the language of the statute indicates that we should have at least put them on notice that there is an issue. It expressly forbids not only the disposal of any of the real estate constituting the dairy farm. It also forbids disturbing the rural character. Well, your request for bids didn't say that. It had very specific exclusions. It didn't say anything specifically about that being an exclusion. Wouldn't that be a fact dispute for someone to determine as to whether or not they relied on that bid offer as well as the acquiescence of the Navy in allowing them onto the land? They don't have a remedy if we could not have given them the contract. If the interpretation of the contract and the statute, which is a legal issue, specifically forbids it, then nothing we could have done could have given them the contract. I don't understand what you're arguing. They're not arguing that they want the contract. They say that specifically. What they want is their bid preparation costs because they were misled into thinking that this was permissible and they wasted money doing it. Right, but they haven't cited any precedent saying that that's a cause of action. I'm not aware and they didn't cite any in their briefs saying that this court has pre-actual receipt of the bid that conduct was actionable. So to that extent, as we pointed out in our briefs in the L.W. Matheson case, the government simply has no duty to do their legal research. The statute says you can't dispose of the real estate encompassing the Naval Academy. I have the real estate that encompasses the land we're going to be leasing and the regulation says embedded sand and gravel. This is defined as real property. But then you could have told them that. We don't know anywhere in the record as to when you got the information that that was not going to be part of any contract. At some point the Navy knew that and didn't convey that to them and it could be assumed, again factually, that that information came to the Navy prior to the Navy allowing them onto the land to do the soil testing, the drilling to determine whether they could in fact extract sand, et cetera, from the land. That complaint could be read as asserting that the complaint isn't clear when the timeline for the decision was. Which is why they're seeking the remedy they're seeking. Right. But the fact is that the Navy didn't have a bid in front of it saying we explicitly propose to do this, this, and this, and this until March. All their bid preparation costs for which they seek remedy are back in February. Given I see that my time has expired, unless there are any further questions, I would ask this court to affirm the decision of the court below. Thank you, Mr. Bowen. Mr. Rich has a little rebuttal time. Your Honor, obviously we had to do the work before the bid was due in order to submit the bid and obviously the drilling and the investigation of the amount of reserves had to be done prior to it. Yet, they would not tell us anything until after the bids were submitted and then he told us afterwards. In fact, they eliminated our ability to object to the solicitation under B1 because of what they did. They refused to tell us. Has the contract been awarded now? We think the contract was awarded or was continued with people doing organic farming. There weren't a whole lot of bidders here. But can you file a complaint under the procurement provision at that point? Or excuse me, under the fact that someone else got the contract and you didn't under a different theory? Do you have any remedy left? I don't think there's any remedy in the U.S. District Court as Judge Braden thought in her decision. I think that's fairly clear. I don't know how we get there. And the other thing is I cannot believe when you're talking about in violation of a statute or a regulation, that's a large chunk of remedy that people are assuming Congress just intended to throw out for a non-procurement bidder. At this point, you're not asking for the contract. No, we're not asking for the contract. We're realistic that there are political reasons why this happened, both local and federal. We just wanted the money, the exact dollar that we put into it, we wanted the money back. And it was substantial dollars. It cost a lot of money. Before the recession, it cost more money. But it cost a lot of money to do the drilling and determine how much reserves are on a piece of property. And my clients were encouraged throughout this. They were encouraged to do this because the return to the Navy was substantially larger than the Navy's getting from the eventual person to whom the contract was awarded. I can assume that. I don't know that that's in a record, but I have to assume that given the different uses. And the other thing I would mention is under the state law, mining is part of an agricultural usage. Agricultural uses under zoning laws in Maryland. So it's typically a special exception use under agricultural zoning. So we did satisfy that, and there was no reason to raise these questions. Especially in light of the list of prohibited usages and the ongoing dealing with the Navy. It wasn't just one time. I mean, there was an ongoing effort with the Department of Navy to accommodate their desires and also accommodate our desires to investigate this property. I think my time is about up. I appreciate the opportunity to be here, Your Honors. Thank you, Mr. Rich. The case will be taken under advisement. Thank you. All rise.